Chief Justice Robertson,
delivered the opinion of the court.
This is an action of covenant, instil uteri by Davidson against Pope, on the followin'# writing:
“Whereas, Elias Davidson has, at my request, this day become, security for 1 ,eroy Gregory to John Helm, in a note to said Helm for one thousand dollars, payable the 1st day of June next, a transaction in which I am interested; in consideration wherof, I feel bound to indemnify said Davidson, and, therefore; hereby covenant and agree with said Davidson, that I will indemnify him and save him harmless, and from all loss, injury and damage, which he may sustain, or be liable to, in consequence of becoming security for said Gregory, in the note aforesaid. Witness, my hand and seal, this 13th day of September, 1821.
„ * JOHN POPE. (Seal.) Witness. Jifo. B. HuNhijby.”
The note to Helm was executed simultaneously with the covenant, and was signed and acknowledged by Leroy Gregory, as principal, and Elias Davidson and John Hughes, as sureties.
The declaration assigns, for breach, that Davidson had “been compelled to pay said note to said Helm,” and that Pope had failed to indemnify and save him harmless.
' An informal issue was made up, on a plea that Davidson had not been compelled to pay the note, and that Pope had performed his covenant; and on that issue, verdict and judgment were rendered against Pope, at the May term, 1830, of the circuit court, for $1,522 in damages; to reverse which, he prosecutes this writ of error.
It appears from the evidence in the record, that. Helm, having oblained a judgment on the note against Gregory, Davidson and Hughes, caused a feri farms to he issued thereon, which, having been levied on properly of Gregory sufficient to satisfy it, was replevied *401 For two years by him, Davidson and Hughes, with Thomas Waters as sureties; that Hughes and Waters then took a mortgage on the estate of Gregory to se■cure debts alleged to be due from him to them, and under a decree, foreclosing said mortgage, sold the estate before the replevin bond became due; in consequence of which, Gregory became insolvent, and Davidson paid the amount due on the replevin bond • some rime after it became due; and all this was done, as Pope offered to prove, without his consent.
These facts were pleaded by Pope in various pleas 'substantially the same, but in form different; but demurrers to all of them were sustained by the court.
Pope insisted in the circuit court, first, that if he was liable at all, his liabiiily was for no more than one half of the amount paid by Davidson, as Hughes, his co-surety, was liable for the other half; and, second, that the levy of the fieri facias, and the replevin for two years, exonerated him entirely.
After considering'these two propositions, and incidentally construing the covenant, as we shall now proceed to do, it will be unnecessary to notice directly -other minor points presented, in instructions given and ■"withheld, in refusing to admit testimony which was offered, in overruling a motion for a new trial, and in other matters, all of which will necessarily be disposed •of in a decision on the two fundamental questions which have been stated.
1st. To ascertain the extent of-Pope’s liability, is far from being easy, conceding that (as the covenant maybe considered as an undertaking to indemnify against a future liability, and more especially as it expressly stipulates against all liability,) a breach resulted ■from toe non-payment of the note when it became due, Davidson could not, if he had then sued without having paid any thing, have recovered the amount of the note. The covenant is to him, as a surety, it was for ids benefit ■only, and not .for the benefit of the principal, and other Surety, it could not, therefore, have beenfintended, or be understood, as an undertaking by Pope to pay the debt when it became due. There was no privity between him and Helm, nor between him and Gregory ■Or Hughes. Davidson was requested by him to become *402 a surely, and he agreed to indemnify him as such; that is, he agreed, as between themselves, to stand in the place of Davidson and save him from loss, in consequence of being, at his instance, a surety. The covenant cannot, be construed so as to impose on Pope a greater liability than would have resulted from his being a surety, instead of Davidson. Indeed, it would be unreasonable to give it r-uch a construction as would render him as immediately and extensively liable as lie would have been, if he had been one of the sureties. If he had paid to Ileim the amount of the note when it became due, he could not have recovered it from Gregory in an ac'ion of assumpsit, in his own name, because he would not have paid it at the request of Gregory. If he had tendered it to Helm, the latter might, as he was a stranger, have refused to accept it and give up the note, and could still have maintained a suit on the note. Pope was certainly not hound,by his covenant, to pay the amount of the note to Davidson on the day when it became, due, or at any subsequent time prior to a payment of it by Davidson. If he had paid it to Davidson, the debt to Helm would not thereby have been discharged. It might still have been coerced, and out of Gregory too-, and we know of no legal remedy by which Pope could have obtained restitution, or by which Davidson could have been compelled to pay to any person the amount paid to him bv Pope. The amount of the note would then have been paid twice; once by the principal obligor to the obligee; and once, by a stranger, to one of the sureties of the principal; and as the principal had only paid his own debt, bis payment would have given him no claim on any other person for the amount; ñor would the obligee be liable to any person, because he had only received once what he was entitled to. If Pope had also given a similar bond of indemnity to Hughes, could both Davidson and Hughes have recovered from him the whole amount of the note ? Or, suppose that therebad been twenty surefies, all severally indemnified by Pope, could each of them have recovered from hinrtheamountofthenote? Withoutpursuingthis subject further, we think that it is sufficiently manifest, that the bare non-payment of the note to Helm, did not entitle Davidson to the amount of it from Pope. But as there was then a technical breach of the covenant, any damage whichDavidsop had sustained, might *403 have been recovered by him from Pope. He might have recovered, at all events, nominal damages, and a jury might have given him more,but they could not have given more than his actual loss, and a just estimate of his prospective hazard or damage. See Powell vs. Smith, VIII Johnson, 192.
&is a. surety in a note which is payahle 011 !1/“-KveUtf harmless from all liability resulting front shipffa sbeh case, the bare -‘.m-iayment ° h becomes due, is a technical entitles A to recover of him nommul ages a ea* "
If Davidson had, in good faith, paid the amount of the note to Helm when it became due, Pope’s liability would have been Increased. Davidson, although only a surety, was legally responsible for the whole debt. If theprincipal refused orfailed to pay it, Davidson ought to have paid it. This contingency was, of course, contemplated by the covenant. But if the principal had been willing to pay the debt, and had been anticipated by the offieiousness of Davidson, intended merely to throw the burthen on Pope, such a payment would not have been made in good faith, and was not contemplated by the parties to the covenant. The indemnify is only against such loss as was incidental to the surety-ship, and which might necessarily or properly result to Davidson from it; and, therefore, an officious payment by him, when it was not necessary or proper that he should have made it, would not have subjected Pope to a restitution of it.
But, admitting that he had paid the debt in good faith, is Pope responsible to him for the whole amount? This question is not a little vexatious. It would not be very unreasonable to presume, that Pope intended only to indemnify Davidson against his ultimate loss as a surety. If he had the debt to pay, the principal was bound to him for the whole amount; and if the principal should be insolvent, the co-surety would be bound to contribute one half. These were Davidson’s secureties, independently of Pope’s covenant. He was not willing to rely on them; and the inference would be at least plausible, that Pope, considering all those contingencies, to which as surety, Davidson would be liable, intended barely to guaranty against them, and assure to him indemnity against eventual loss, which should be sustained in consequence of the inability of the principal and co-surety to repair it. If Pope had paid Davidson the amount which he had paid, he could’ not recover it from Gregory by a suit in his own name, nor could: he, by any such suit, compel Hughes to con *404 tribute. Whether he could maintain a suit against either of them, in Davidson’s name, or sustain a. bill' in chancery in his own name, it is not material or proper now to determine. If, then, the proper construction of the cot enant should be, that Pope undertook to guaranty the solvency of the principal and co-surety, or that the principal would pay the debt, and thatDavidson'should sustain no irreparable loss, it would follow,that although Gregory may be insolvent, no payment which could have been made by Davidson, could entitle him to more than so much ef it as Hughes would not he bound to contribute.
A-is a swell/ in a note,anil B covenants to indemnify and save him harmless from all liability consequential upon his sewifcyship in. the note, if A bor<n.fide pays off the note, he may, in tho first instance, maintain an. action against B upon his covenant, without a, previous suit against the principal in tho note, or theother sureties for contribution.
A special plea-in bar, which contains such matter only as should mitigate the damages, is
But, whatever may have been the actual5 intention of the parties, we are of opinion, that the legal construction1 ■ of the covenant is, that if Davidson should necessarily or legally be subjected to any .loss in consequence of us suretyship, he might cal] on Pope immediately for indemnity, and not be compelled first to-resort to his collateral and independent legal remedies against his principal and co-surety.
Pope lias covenanted to indemnify him, as surety, if then, as surety, he paid the debt, oi any part of it, buna jidb, there was, co instanti, a breach, quoad hoc, of Pope’s covenant;.and,of course, suit might be maintained for that breach, although Gregory and Hughes were abo liable to suits on their legal liabilities. The liabilities were all independent of each other; and it is to be inferred, that one of the objects of the covenant was-to relieve Davidson from the necessity of pursuing his legal remedies against Gregory and Hughes, and on which alone, he was unwilling to rely. See Chilton, et al. vs. Cromwell, III Wilson, 13.
If,,therefore, Davidson has- a right to recover from Pope, any part of the amount which he paid to Helm, he has a right to- the whole of it. This brings us to the second proposition.
2d. We have stated, that as a technical breach of the covenant resulted from the non-payment of the debt by Gregory, when it became due, Davidson would have been entitled to nominal damages at least, even if he had never paid any thing; and, therefore, the circuii court did not err in sustaining demurrers to Pope’s special pleas, because they were pleas in bar, and coir *405 tained matter, which, if available, tended only to mitiarate the damages. , * ® 1
A is surety in a uote>am1 B indemnify him against'a’l liconse2iesecurity°n ship in the no.te .if> the AfcUre'lo^ that ñute and substitute another for a different sum, or payable at a.mon remote peñod, no responsibility or payment by A in consequence of such substituted note, will entitle him-to recover indemnity upon B’s covenant.
*405 . But in showing that he had paid the money, and how he paid it, Davidson has proved the substance of the facts relied on in the rejected pleas; and, therefore, if they show that he is not entitled, to the amount, for which he obtained judgment, that judgment must be, reversed.
Pope covenanted to.indemnify Davidson against all liability resulting from his suretyship, in ths not" to Helm, and against all loss which he might consequently sustain, and which he could not avoid without a breach of faith, or of the legalobligationincurred by becoming asurHy. This is the fair and inevitable construction of the covenant. If, therefore, Davidson had, in good faith, voluntan ly paid to Helm the amount of the no te, when, or after it became due, Pope would have been liable to him for the whole amount so paid; because, such a payment would have been a consequence of the under! along as surety, and could not have been withheld without a breach of the legal obligation imposed on the surety.
But, if Gregory had been prepared and resoived to discharge the note as soon as it was payable, and Davidson, for !;he purpose of imposing unnecessary bur-then on Pope, had interposed and paid oif the note before it became due, Pope would not have been responsible to him for the amount so paid, because the payment was not necessary, and might have been withheld without a breach of Davidson’s contract, as surety. Associated with Pope’s covenant, there is also an implied condition; and that is, that Davidson should not, ■ by any positive act, which his undertaking as surety should not require, increase Pope’s liability.
If, when the note became due, or before or after that time, Gregory, us principal, and Davidson and Mugues, as sureties, had taken it up and substituted another for a different sum, or payable at a more remote period, no responsibility or payment in consequence thereof, could iiave entitled Davidson to damages on Pope’s covenant, because the responsibility so incurred, or tne payment so made, would have been unnecessary to the original liability, and would have been in consequence of a new contract, against which, Pope had not cove- *406 ■ranted to indemnify Davidson. The substitution of the new note would have been an extinguishment oí the old one, but the debt would still have been due to Helm,and by the same persons; and, for reasons already-suggested and others which need not be staled, would-not have entitled Davidson to the amount of it from Pope. It has been decided, that if A guaranty, to B indeninity against all loss resulting from notes which he had endorsed for C, and afterwards those notes are taken up, and other notes signed by A and D and en-, dorsed by B, are substituted, B, if he have the whole amount to pay, could not recover it from A.' Russell’ vs. Perkins, I Mason, 368.
Now the payment made by Davidson, was upon, and in consequence of, a new contract different from that described in the covenant, and one which his legal ob-ligation, as a surely, did not require him to make, and which Pope’s covenant did not contemplate or embrace. When ihe fien facias was levied on the property of Gregory, both Davidson and Pope were perfectly secure, and the judgment would have been satisfied by Gregory, and Davidson would have been exonerated if he had only been passive. But be entered voluntarily into another contract, which not only renewed, butgreatly increased his responsibility, by postponing Helm’s right to coerce hisdebt,and where by his own liability on the note,and judgment upon if, was extinguished. This interference, by Davidson, without Pope’s privity, was upon his own responsibility, because it was not rendered necessary by his legal obligation,and was not consistent with the spirit and integrity of his contract with Pope. As surety, he could have avoided it; as surety, it did pot devolve upon him as a duty, moral or legal. It was a gratuitous act, which prevented the payment of the judgment by Gregory, and has resulted in his subsequent insolvency. Pope did not undertake to protect Davidson from the consequences of his own acts not rendered necessary or proper by his suretyship. Suppose that the obligors,had given a new bond to Helm, on a credit of twenty years for usurious or legal interest, (it is not material which,) would Davidson be entitled to the amount which he might choose to pay, or be compelled to pay, on the substituted contract? The an** awer is plain. He would not
A is surety m anote, Bcovagainst all K-his security-shiP»; the meat‘Is tained upon the «ote, and fssaeTthereon, is levied upon property of' the principal sufficient to discharge the demand, ■if A and the .principal in the, note, afterwards replevy the debt by giving bond and security,no payment made by Ain discharge of the replevin bond, can be recovered by him from B upon the covenant of indemnity.
*407 If then, an ordinary private obligation had been given instead of the replevin bond, there could be no doubt that Popé was thereby exonerated from liability to Davidson for the amount of the bond. But a replevin bond being an usual incident to a judgment, the courb sel for Davidson has argued, that by replevying the execution,no new thing was done which was not incidental to the suretyship, or which was not contemplated by the parties to the covenant. We will not now decide, because it is not necessary to do so, how far such reasoning would apply to the replevin bond, if the execution had been levied on the estate of Davidson instead of that of Gregory, or even had been replevied before any levy. But if it would, in either of those supposed cases, have been consistent with Pope’s liability for Davidson to have replevied the execution, the only-reason why it could have been so, would have been because, without a replevin, he might have been subjected to unnecessary loss by being compelled to satisfy the execution by the sacrifice of his property. But that reason, whatever effect it should have in a case to which it would apply, can have no influence on this case. Davidson was out of danger. He could not have been compelled to contribute any thing to the satisfaction of the execution, because it had been levied on Gregory’s property, and that property was liable and adequate. His agency, therefore, in suspending the creditor’s remedy, and in substituting a new and essentially different liability, was perfectly, voluntary, and without legal motive or excuse. He had no stronger motive than Waters had, nor was he under any greater obligation than Waters was, to join in the replevin.bond. Seeing his own escape, and the rescue of Pope assured, he, like Waters, ventured to incur a responsibility on the faith which he reposed in Gregory, and for the sole benefit óf Gregory, not for his own advantage or that of Pope. ■
His act did benefit Gregory and Hughes and Waters; and in consequence of that act, and not because tie was surety in the note, he has paid the debt. Pope agreed that he should not be “ compelled,” by' his legal obligation in the note, to pay the amount of it or any'part of it. líe was not thus «compelled,” and, after the levy, could not have been. He prevented Helm from xnaking his debt out of Gregory; and this he did by a *408 voluntary act which his liability, as a surety, did not feeder necessary or proper, and which, as between him and. Pope, the contract did not permit. If he had not thus gratuitously interfered and frustrated the creditor, he never would have paid the debt,and this suit would never have been brought. Wherefore, as to the payment which lie made, there has been no breach of Pope’s covenant; and consequently, the jury had no right to find more than nominal damages, as there is neither allegation nor proof of any other damage than that sustained in consequence of the payment of the debt. An insurer against the casualties incident to the navigation of the Mediterranean, is not responsible if the insured vessel be swallowed by the Norwegean vortex; nor is one who insures another’s life, liable for the suicide of the insured.
DenmMills -and Brown, for plaintiff; Hardin, for defendant.
Judgment reversed, and cause remanded for a new trial.